**EXHIBIT "F"**

1          IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

2                      STATE OF HAWAII

3    _____
                                          )
4    STATE OF HAWAII,                     )
                                          )
5                                         )  Cr. No.: 05-1-1615
                                          )  TRANSCRIPT OF
6              vs.                        )  PROCEEDINGS
                                          )
7    LESLIE KAKINAMI,                     )
                                          )
8                    Defendant.           )
     _____)
9

10                  TRANSCRIPT OF PROCEEDINGS

11   before the Honorable MICHAEL A. TOWN, Circuit Court Judge

12   presiding on February 28, 2006.

13                      (Change of Plea)

14

15   APPEARANCES:

16   JOHN ALBERTO MONTALBANO, Esq.      Attorney for the State

17

18   CHRISTOPHER R. EVANS, Esq.         Attorney for Defendant

19

20

21

22

23
     REPORTED BY:
24   Brian Faxvog, RPR, CSR #342
     Official Court Reporter
25   State of Hawaii

```
 1                      FEBRUARY 28, 2006

 2              THE BAILIFF:  Calling cases 3, 4 and 5.

 3     Criminal number 05-1-1615, 05-1-1718, and 05-1-1736.

 4     State of Hawai'i versus Leslie Kakinami.  Appearances,

 5     please?

 6              MR. MONTALBANO:  Good morning, Your Honor.

 7     Deputy Prosecuting Attorney John Montalbano representing

 8     the State.

 9              MR. EVANS:  And good morning.  Christopher

10     Evans on behalf of Leslie Kakinami.  She's present this

11     morning.

12              THE COURT:  Good morning, counsel.  Good

13     morning, Miss Kakinami.

14              For the record, we met briefly in chambers.

15     The State, Mr. Montalbano, reserves the right here to ask

16     for extended persistent terms or consecutive terms, and to

17     ask for the maximum term provided by law, including the

18     maximum mandatory minimum.  Correct?

19              MR. MONTALBANO:  That is correct, Your Honor.

20              THE COURT:  Historically, reserving the right

21     to the State, and I'm not giving any promises here,

22     normally I knock these down at least one on a plea.  From

23     a -- these are a bunch of B felonies and one -- I mean a

24     bunch of C felonies and one B, Counsel?

25              MR. EVANS:  That is correct.
```

1          THE COURT:  I'm looking here.  The two B's.

2    And two, five, six, seven C's.  Normally I knock these

3    down to a six, eight.  But depending on what's happening

4    with the Federal case, cooperation with the PSI says I am

5    not adverse to considering something lower.  There has to

6    be strong mitigating circumstances.

7          MR. EVANS:  Yes.  I'm aware, Your Honor.

8          THE COURT:  I'll let you know which way the

9    wind's blowing before.  We're going to do some sentencing

10   in August; is that right?

11         MR. EVANS:  Yes.  There is a date of August

12   28 that is set for revocation of the prior cases.  I'm

13   sorry.  22nd.  I stand corrected.  August 22nd.

14         THE COURT:  Maybe we should set the week

15   later.  I may be on a week's break to teaching somewhere.

16   That hasn't been confirmed.  But it looks like it's going

17   to happen.

18         Alden, it looks like I'm off the week of the

19   21st right now.

20         MR. EVANS:  28.

21         THE COURT:  28th.

22         MR. MONTALBANO:  Your Honor, the Court is

23   moving the prior cases that the Court's already taken the

24   change of plea into the 28th?

25         THE COURT:  Well, I don't know.  I just need

```
 1    to -- I can't sentence her on the 22nd if I'm not here.
 2                MR. EVANS:  Well, what we've got scheduled
 3    for the 28th now is the sentencing on the prior cases that
 4    were before Your Honor on a motion.
 5                THE COURT:  I know you can't by Miss Tanaka.
 6    But any objection, assuming she has time on that day?
 7                MR. MONTALBANO:  I can probably represent
 8    that she'd be okay.
 9                THE COURT:  Physically I'm going to be
10    teaching in Vanuatu that week.  So -- that's tentative.  I
11    haven't got my plane tickets yet.  It's a break where I go
12    down and help out with the justice effort.
13                Now, let's go ahead with the change of plea
14    today, Mr. Evans?
15                MR. EVANS:  Yes.  My client --
16                THE COURT:  May I address your client?
17                MR. EVANS:  Yes, you may.
18                THE COURT:  Your name, ma'am?
19                THE DEFENDANT:  Leslie Kakinami.
20                THE COURT:  Good morning once again.  You've
21    been in front of me several times, correct?
22                THE DEFENDANT:  Yes, Your Honor.
23                THE COURT:  I'm going to walk you through
24    these changes of pleas.  My job is to guarantee and assure
25    your rights to -- that you understand what's going on.  If
```

1    you have any questions, will you let me know?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  If you answer my question, I'm

4    going to assume you understand.  Do you understand that?

5                THE DEFENDANT:  Yes.

6                THE COURT:  How old are you, ma'am?

7                THE DEFENDANT:  44.

8                THE COURT:  And you graduated from what high

9    school and where?

10                THE DEFENDANT:  Kaimuki in Honolulu.

11                THE COURT:  And I have before me three change

12    of plea forms in each of these criminal numbers.  Did you

13    sign them today?

14                THE DEFENDANT:  Yes, sir.

15                THE COURT:  Did you discuss them with Mr.

16    Evans and understand them before you signed them?

17                THE DEFENDANT:  Yes.  I did, sir.

18                THE COURT:  Your mind is clear today?

19                THE DEFENDANT:  Yes.

20                THE COURT:  You taken any medicine?

21                THE DEFENDANT:  No.

22                THE COURT:  You taken any -- have you taken

23    any other alcohol or illegal drugs in the last two days?

24                THE DEFENDANT:  No.

25                THE COURT:  Are you healthy today?

```
1              THE DEFENDANT:  Yes, I am.
2              THE COURT:  How long have you been in
3    custody?
4              THE DEFENDANT:  Since August 12th.
5              THE COURT:  August 12th of '05.  Do you feel
6    worse or better since you've been in custody?
7              THE DEFENDANT:  Better.
8              THE COURT:  Why?
9              THE DEFENDANT:  I'm drug free.
10             THE COURT:  Yes.  That makes sense.  You look
11   good.  You look healthier today than when I have seen you
12   before.
13             THE DEFENDANT:  Thank you.
14             THE COURT:  You can read, write and
15   understand English?
16             THE DEFENDANT:  Yes, sir.
17             THE COURT:  You do understand each of the
18   charges here?  We've got -- let me go over them again.  On
19   05-1-1615, Forgery Two, Identity Theft Three, Theft Three.
20   On 1718, Forgery Two, two times.  Theft Two.  And Identity
21   Theft Two.  Do you understand all of those charges?
22             THE DEFENDANT:  Yes, I do.
23             THE COURT:  And on the last one, the 1736,
24   Forgery Two, Theft Two, and Identity Theft Two.  Do you
25   understand those charges?
```

1               THE DEFENDANT:  Yes.

2               THE COURT:  Did Mr. Evans go over them with

3     you and answer any questions you might have?

4               THE DEFENDANT:  Yes, he did.

5               THE COURT:  Did you tell Mr. Evans everything

6     you know about your case?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Did he explain the kind of case

9     the State has against you, potential defenses, and the

10    facts the State must prove, either to this Court or to a

11    jury, in order for you to be convicted?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Are you pleading of your own free

14    will?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Anybody forcing you to plead?

17              THE DEFENDANT:  (Shakes head.)

18              THE COURT:  Are you taking the blame here

19    because this happened?  Or are you taking the blame to

20    cover up for another person?

21              THE DEFENDANT:  No.  I'm wrong.

22              THE COURT:  You taking the blame because you

23    did this; is that right?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Now, you do understand -- I

1    respect that, ma'am.  You have the right -- as you stand

2    here today, you're presumed innocent by this Court and the

3    Constitution.  You remain that way until you either plead

4    guilty, or Mr. Montalbano's office can prove to twelve

5    jurors unanimously, as far as each and every count, that

6    there's proof beyond any reasonable doubt.  Do you

7    understand that?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  It's a high burden of proof.  You

10   don't have to prove a thing.  They have to show that to

11   the jury.  You get to be dressed in court clothes, not

12   your custody clothes.  You'd get to see, hear and question

13   each witness.  They'd testify from that very witness

14   stand.  Do up understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  In fact, yesterday I had a trial

17   with two defendants.  And the jury found one guilty, and

18   the other they found not guilty.  Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  So the jury, depending on the

21   evidence and the law, will work their will.  Do you

22   understand that?  And now, and if there is a trial, you

23   can ask Mr. Evans to bring in witnesses to testify for

24   you.  And while you do not have to testify, you could take

25   the witness stand.  Do you understand that?

1                    THE DEFENDANT:  Yes.

2                    THE COURT:  And you'd be treated like any

3     other witness.  By pleading guilty, do you understand no

4     trial?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Do you understand you'll be found

7     guilty?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  And you'll give up your right to

10    trial?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  And if you're unhappy with the

13    sentence later, you cannot appeal.  Do you understand

14    that?

15                   THE DEFENDANT:  (Nods head.)

16                   THE COURT:  Now, as far as each of these

17    criminal numbers, I'm going to walk them through by -- I

18    guess by number.  05-1-1615, the C felonies, you could get

19    a ten-year -- excuse me -- a five-year prison term.  They

20    could be doubled to ten, $10,000 fine, or both.  Do you

21    understand that?

22                   THE DEFENDANT:  Yes, sir.

23                   THE COURT:  And the misdemeanor Theft Three,

24    that would be one year jail, $2,000 fine.  Do you

25    understand that?

1              THE DEFENDANT:  Yes, sir.

2              THE COURT:  Any and all felonies you

3    understand can be doubled?

4              THE DEFENDANT:  Yes.

5              THE COURT:  And they could be stacked up too,

6    which we'll talk about in a little bit.  On 1718 here,

7    counts 1 and 4, five year prison could be doubled to ten.

8    $10,000 fine.  Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  It's a Forgery Two.  On the Theft

11   Two, five year prison, that could be doubled to ten years,

12   $10,000 fine, or both.  Do you understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  And count 3, Identity Theft, is a

15   B felony.  You could get ten years.  That could be doubled

16   to twenty, and a $25,000 fine.  Do you understand that?

17             THE DEFENDANT:  Yes.

18             THE COURT:  On the earlier one that I read,

19   and on the mandatory minimum -- I'm not sure, Mr. Evans,

20   on 1615 there's a mandatory ten-year term.  That would be

21   a mandatory five, because there's only C felonies.  Is

22   that right?

23             MR. EVANS:  Correct.

24             THE COURT:  May I write in five there?  You

25   see the five --

1          MR. EVANS:  I thought I did.

2          THE COURT:  Well, it says ten.

3          MR. EVANS:  Oh.

4          THE COURT:  Maybe I got it wrong.  I'll

5   initial it.  Would that be right, Mr. Montalbano?

6          MR. MONTALBANO:  Your Honor, in 1615 Miss

7   Kakinami faces a mandatory minimum of five out of five.

8          THE COURT:  Okay.  You did.  You did it

9   there.  I got it.

10          MR. EVANS:  No.  I thought it was three,

11   four.  But --

12          THE COURT:  No.  You got it.  You got it.

13          MR. MONTALBANO:  And in 1718, Miss Kakinami

14   faces a mandatory minimum of ten out of ten.

15          THE COURT:  Ten out of ten.  Do you

16   understand that, ma'am?

17          THE DEFENDANT:  Yes.

18          THE COURT:  The main thing is this Court

19   cannot give you probation under the law.

20          THE DEFENDANT:  I understand.

21          THE COURT:  You understand that?  You must

22   get a prison term.  The question then is what is your

23   mandatory minimum before the paroling authority can parole

24   you.  Do you understand that?

25          THE DEFENDANT:  Yes.

1          THE COURT:  And that could go down based upon
2   strong mitigating circumstances.  Okay?
3          THE DEFENDANT:  Yes.
4          THE COURT:  And that -- but you have to tell
5   the paroling -- you have to convince the paroling
6   authority.  They could still max you out, say ten out of
7   ten.  Right?
8          So let's look at 1736 here.  On that one, the
9   Forgery Two, the Theft Two, could each get a five-year
10  prison term, $10,000 fine, or both.  Correct?
11         THE DEFENDANT:  Yes.
12         THE COURT:  And that could be doubled to ten
13  years.  And the Identity Theft Two is a ten-year prison
14  term, $25,000 fine, or both.  Do you understand that?
15         THE DEFENDANT:  I understand.
16         THE COURT:  And the mandatory minimum on the
17  Identity Theft Two is a ten-year, and on the forgery and
18  theft would be five years.  Do you understand that?
19         THE DEFENDANT:  Yes, sir.
20         THE COURT:  I can drop that.  The Court could
21  reduce that if you could convince the Court there's strong
22  reasons.  Do you understand that?
23         THE DEFENDANT:  Yes.
24         THE COURT:  All right.  Anything more counsel
25  need to add in terms of the possible punishment?  I want

1    to make it as good a record as I can.

2                    MR. MONTALBANO:  Nothing further regarding

3    the punishment.

4                    MR. EVANS:  And likewise for Defense, Your

5    Honor.

6                    THE COURT:  A couple more things, now, Miss

7    Kakinami.  I want you to take your time.  Do you

8    understand everything so far?

9                    THE DEFENDANT:  Yes, sir.

10                    THE COURT:  Any questions?

11                    THE DEFENDANT:  No.

12                    THE COURT:  Are you comfortable and satisfied

13    with your attorney's assistance?

14                    THE DEFENDANT:  Yes, I am.

15                    THE COURT:  What is his name?

16                    THE DEFENDANT:  Christopher Evans.

17                    THE COURT:  Any complaints?

18                    THE DEFENDANT:  No.

19                    THE COURT:  If you're not a U.S. citizen do

20    you understand the Department of Homeland Security could

21    deport you, you could be excluded from admission to the

22    U.S. or denied naturalization?

23                    THE DEFENDANT:  Yes.

24                    THE COURT:  The box is checked here.  The

25    Court has not promised you any special deals, favor or

1    leniency.  Correct?

2                   THE DEFENDANT:  Correct.

3                   THE COURT:  I told you if you give good,

4    strong reasons, I'll take it down.  But if you don't, I

5    got to do what I got to do.

6                   THE DEFENDANT:  Yes.

7                   THE COURT:  Anything more before I take the

8    plea, counsel?

9                   MR. MONTALBANO:  Factual basis, Your Honor.

10                  THE COURT:  I'm getting there.  I'm working

11   my way through it.

12                  Now, having talked to your attorney and

13   gotten his good advice, how do you plead to each of these?

14                  MR. EVANS:  We checked the block No Contest.

15                  THE COURT:  That doesn't help her get a

16   reduced minimum, from this judge.

17                  MR. EVANS:  Then we'll check the block

18   Guilty.

19                  THE COURT:  The world I live in --

20                  MR. EVANS:  Just that simple.

21                  THE COURT:  The world I live in, when you

22   goof, you goof.

23                  MR. EVANS:  Right.

24                  THE COURT:  And if you don't goof, you say

25   well, I didn't goof, but I'll take my medicine.

Brian Faxvog, CSR 342
Official Court Reporter
State of Hawaii

1           So what is your plea?

2           THE DEFENDANT:  Guilty.

3           THE COURT:  Let's walk them through one at a

4    time.  I need a factual basis, I guess.  I'm not quite

5    sure what to do here.  Let's start with 1615.

6           MR. EVANS:  We can stipulate to a factual

7    basis.

8           THE COURT:  Well, I like to hear them.

9           MR. MONTALBANO:  I'd like to place it on the

10   record.

11          THE COURT:  Thank you.

12          MR. EVANS:  Sure.

13          MR. MONTALBANO:  In 1615, Your Honor.

14          THE COURT:  Yes, sir.

15          MR. MONTALBANO:  On May 11, 2005 Miss

16   Kakinami went to the Nalu Kai store in Ala Moana and

17   purchased $150 worth of merchandise.  She wrote a check

18   from the checking account of the complaining witness,

19   Linda Cacpal.  And she used an identification with Miss

20   Cacpal's information but Miss Kakinami's picture.  This

21   occurred in the City and County of Honolulu, State of

22   Hawai'i.  And that would satisfy the Forgery Two, the

23   Check Writing, the I D Theft, and the Theft Three of the

24   goods from Nalu Kai store.

25          THE COURT:  Is this consistent with the

```
1   police report, Mr. Evans?

2                   MR. EVANS:  Yes, it is.

3                   THE COURT:  Is that what happened?

4                   THE DEFENDANT:  Yes, sir.

5                   THE COURT:  How did you create such an

6   amazing I D, get your picture on there?  Who helped you?

7                   THE DEFENDANT:  Nobody.

8                   THE COURT:  You did it?

9                   THE DEFENDANT:  Yeah.

10                  THE COURT:  And did you do it to get drugs?

11                  THE DEFENDANT:  Yes, sir.

12                  THE COURT:  So you bought things.  Did you

13  get money or just items?

14                  THE DEFENDANT:  Items.

15                  THE COURT:  $150 worth of stuff.  Did you

16  then sell it?

17                  THE DEFENDANT:  Sell it for money.

18                  THE COURT:  And where did you go sell it to?

19                  THE DEFENDANT:  To people with drugs.

20                  THE COURT:  Where do you go to sell these

21  things?

22                  THE DEFENDANT:  People's house.

23                  THE COURT:  Just go door to door?

24                  THE DEFENDANT:  Kind of.

25                  THE COURT:  Anyway, I'm not quite getting it.
```

1    But let's move to 1718.

2                    MR. MONTALBANO:  Your Honor, in that case, on

3    July the 6th, 2005 Miss Kakinami went to First Hawaiian

4    Bank on Kapiolani Boulevard.  She possessed a fake

5    identification of the complain -- of one of the

6    complaining witnesses, Sheila Lum.  With Sheila Lum's

7    information, but her picture on the I.D.  She deposited a

8    check for $3,840 drawn on the account of Dr. Larry

9    Coffman.  And then she asked for cash back in the amount

10   of $2,000.  All in the name of Miss Lum.

11                   The transaction was discovered by Miss Lum,

12   and it was reported to the police on July the 15th, 2005.

13   However, prior to that, Miss Kakinami returned to the

14   First Hawaiian Bank on Kapiolani Boulevard and again

15   attempted to withdraw money or perform some transaction in

16   the name of Miss Sheila Lum.  And she was arrested at the

17   scene on July the 8th, 2005.

18                   THE COURT:  Is that what happened, Miss

19   Kakinami?  Or not?  You can tell Mr. Evans if it didn't

20   happen.

21                   THE DEFENDANT:  I wasn't arrested at the

22   scene.

23                   THE COURT:  I can't hear you.  You were not

24   arrested at the scene?  When were you arrested?  Later on?

25                   THE DEFENDANT:  Yes.

```
1                THE COURT:  Where?

2                THE DEFENDANT:  At the State I D office.

3                THE COURT:  Do you accept that?

4                MR. MONTALBANO:  Yes, Your Honor.  That's

5      fine.

6                THE COURT:  Miss Kakinami, going back to the

7      first one, what did you take from -- whatever store?

8                MR. EVANS:  Nalu Kai.

9                THE COURT:  Who?

10               MR. EVANS:  Nalu Kai.

11               THE COURT:  Nalu Kai.  What did you take?

12               THE DEFENDANT:  Clothes.

13               THE COURT:  So you knew people that wanted

14     these clothes?

15               THE DEFENDANT:  Yes.

16               THE COURT:  They gave you cash at a discount?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Which you turned into drugs?

19               THE DEFENDANT:  Yeah.

20               THE COURT:  Now, this one at First Hawaiian

21     Bank, is that generally true, other than when you were

22     arrested?

23               THE DEFENDANT:  Yes.

24               THE COURT:  What is your plea to that?

25               THE DEFENDANT:  Guilty?
```

1        MR. EVANS: You know, for the record, Your

2 Honor, this particular case also has formed a Federal

3 case, the basis for a Federal case in the United States

4 District Court, under criminal number 05-373 before the

5 Honorable David A. Ezra. And she has cooperated and

6 entered a plea in that particular matter.

7        THE COURT: And she's implicated other things

8 may have happened.

9        MR. EVANS: That is correct.

10        THE COURT: Yes. I don't want to get into

11 all that.

12        MR. EVANS: I understand.

13        THE COURT: Can we take 1736 now. How do you

14 plead to that?

15        THE DEFENDANT: Guilty, Your Honor.

16        THE COURT: I need a factual basis.

17        MR. MONTALBANO: That on May the 2nd, 2005

18 Miss Kakinami went to Gaspro. She made a purchase of

19 $570.83, using the check of the complaining witness, Linda

20 Cacpal, and an identification with Miss Cacpal's

21 information but Miss Kakinami's photograph. And I believe

22 the items were some type of gas or helium, something.

23        THE COURT: Helium?

24        MR. MONTALBANO: Some kind of gas, Your

25 Honor.

```
1                THE COURT:  Well, she'll help me.  Is that
2    what happened?
3                THE DEFENDANT:  Yeah.
4                THE COURT:  What did you want helium for?
5                THE DEFENDANT:  Somebody wanted a gas torch.
6                THE COURT:  They wanted a torch.  They wanted
7    to fix something?
8                THE DEFENDANT:  A gas torch.
9                THE COURT:  Why did you do that?  Did you
10   turn that into drugs, or did you just want to --
11               THE DEFENDANT:  Yeah, money.
12               THE COURT:  Oh, they gave you the money for
13   the gas torch.
14               THE DEFENDANT:  Yeah.
15               THE COURT:  Very well.  Counsel, I need you
16   to approach.  And I tried to circle on page 2 the guilty
17   plea thing and on the fly sheet at the top.
18               MR. EVANS:  Correct.
19               THE COURT:  I may not have done a very good
20   job.  But we'll do what we can do.  There are the three
21   pleas.  Take a moment.
22               (Pause)
23               MR. EVANS:  Now, one thing for the record,
24   Your Honor.  And that is with respect to representations
25   that I made to the Court in chambers regarding Detective
```

1   Earl Koanui.  When it comes to the probation report, I'm

2   not sure how much, you know, I'm going to want to

3   disclose.  May I approach the bench?

4                THE COURT:  Yes.  I mean you can -- you work

5   that out with Mr. Montalbano and make whatever.  We'll

6   talk about that.  Thank you.

7                MR. EVANS:  Can we talk about that on the

8   record before we recess for the day?

9                THE COURT:  Yes.  Yes.

10               MR. EVANS:  Thank you.

11               THE COURT:  May I go ahead and take the plea?

12               MR. EVANS:  Yes, please.

13               THE COURT:  Leslie Kakinami, in each of these

14  criminal numbers the Court will respectfully find you

15  understand the charges.  You understand the punishments.

16  You certainly understand that there's mandatory prison

17  terms if the State files a motion for repeat offender and

18  proves it up.  And that those mandatory prison terms with

19  mandatory minimums may only be reduced for cause.  You

20  understand your rights to have a full and fair trial by

21  jury, with the many attendant rights.  You understand the

22  -- each right that goes with it.

23               Along with the charges, the punishments and

24  your rights, the Court will find that you knowingly,

25  intelligently and voluntarily entered pleas of guilty to

1    each of these.  The Court accepts those pleas, finds and

2    adjudges you guilty.  You've waived your rights.

3                    That means in 1615, Forgery Two, Identity

4    Theft Three, and Theft Three.  In 1718, two counts of

5    Forgery Two, one Theft Second, one count of Identity Theft

6    Second, I believe that is.  And in 1736, Forgery Two,

7    Theft Two, identity Theft Two.

8                    The Court accepts those pleas.  Finds and

9    adjudges you guilty.  Orders a presentence report.  Orders

10   you to cooperate.  Return to Court in -- coming back when,

11   Alden?

12                    THE CLERK:  August 28th, 8:30.

13                    THE COURT:  August 28th, 8:30, or such other

14   time as is mutually agreeable with the Court and Counsel.

15   Okay?

16                    MR. EVANS:  Yes.

17                    THE COURT:  Are you working a program there

18   at the detention center?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  What are you doing?

21                    MR. EVANS:  Taking the forty hour drug --

22   they don't have -- they just have the forty hour drug

23   program.

24                    THE COURT:  Good.  On work line?

25                    MR. EVANS:  No.  I can't work.  They haven't

Brian Faxvog, CSR 342
Official Court Reporter
State of Hawaii

1    medically cleared me.

2              THE COURT:  All right.  Thank you.  Anything

3    more?

4              MR. EVANS:  Yes.

5              THE COURT:  Yes, sir?

6              MR. EVANS:  We did meet in chambers with Your

7    Honor.  And I know your clerk was present, Alden.  And I

8    believe he may have been able to jot down certain notes

9    with respect to my client's cooperation with the detective

10   by the name of Earl, middle initial T, and then Koanui.

11             THE COURT:  Yes.

12             MR. EVANS:  If not, I'd like to state on the

13   record that we informed the Court of certain things.  And

14   I believe I'm correct in saying that the Prosecution does

15   not dispute the representations that I made to the Court.

16   And that's what I wanted to get on the record.

17             THE COURT:  Fair enough.  Mr. Montalbano?

18             MR. MONTALBANO:  Your Honor, the State would

19   stipulate to Mr. Evans' concerns.

20             THE COURT:  Very well.  Thank you.

21             MR. EVANS:  And I appreciate that.

22             THE COURT:  You're excused.  Thank you.

23             MR. EVANS:  All right.  Thank you very much.

24             THE DEFENDANT:  Thank you, Your Honor.

25             (End of hearing)

```
1                   IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

2                              STATE OF HAWAII

3

4      State of Hawai'i,                    )

5                                           )

6      vs.                                  )

7      Leslie Kakinami,                     )

8                    Defendant.             )

9                                           )

10

11             I, BRIAN FAXVOG, an Official Court Reporter

12     of the Circuit Court of the First Circuit, State of

13     Hawaii, do hereby certify that the foregoing pages 1

14     through 23 inclusive comprise a full, true and correct

15     transcript of the proceedings had in connection with the

16     above-entitled cause.

17

18             Dated this 9th day of March, 2006.

19

20                                          _____
                                            BRIAN FAXVOG, CSR #342
21                                          Official Court Reporter

22

23

24

25
```

                          Brian Faxvog, CSR 342
                          Official Court Reporter
                             State of Hawaii